# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-IA-01542-SCT

*CITY OF TUPELO*

*v.*

*HEATHER J. MARTIN; JUDY SMITH, AS
MOTHER AND COURT APPOINTED CONSERVATOR
OF THE PERSON AND ESTATE OF WILLIAM GREG SMITH;
ANNETTE McKAY, MOTHER AND REPRESENTATIVE
OF THE HEIRS AT LAW OF LISA MAY, DECEASED;
MAMIE IVY, MOTHER AND REPRESENTATIVE OF
THE HEIRS AT LAW OF CALANDRA C. IVY, DECEASED;
FRANKIE M. HUGHES, MOTHER AND REPRESENTATIVE
OF THE HEIRS AT LAW OF CHRIS HUGHES, DECEASED;
DELMONTEZ MAGEE, PAMELA LOUISE HARRIS
AND LORIE LEE ARMSTRONG*

### CONSOLIDATED WITH
### NO. 97-IA-01624-SCT

*CITY OF TUPELO*

*v.*

*HEATHER J. MARTIN; JUDY SMITH, AS
MOTHER AND COURT APPOINTED CONSERVATOR
OF THE PERSON AND ESTATE OF WILLIAM GREG SMITH;
ANNETTE McKAY, MOTHER AND REPRESENTATIVE*

*OF THE HEIRS AT LAW OF LISA MAY, DECEASED;*
*MAMIE IVY, MOTHER AND REPRESENTATIVE OF*
*THE HEIRS AT LAW OF CALANDRA C. IVY, DECEASED;*
*FRANKIE M. HUGHES, MOTHER AND REPRESENTATIVE*
*OF THE HEIRS AT LAW OF CHRIS HUGHES, DECEASED;*
*DELMONTEZ MAGEE; PAMELA LOUISE HARRIS;*
*AND LORIE LEE ARMSTRONG*

**CONSOLIDATED WITH**
**NO. 97-IA-01647-SCT**

*CITY OF TUPELO*

*v.*

*WILLIE PAUL DIXON, FATHER*
*AND LEGAL HEIR AT LAW OF*
*MARCUS DIXON, DECEASED*

**CONSOLIDATED WITH**
**NO. 97-IA-01648-SCT**

*CITY OF TUPELO*

*v.*

*ANNIE PEARL STEVENS,*
*MOTHER AND LEGAL HEIR AT LAW*
*OF YUSEF McKINLEY, DECEASED*

DATE OF JUDGMENT: 12/18/1997

TRIAL JUDGE: HON. FRANK A. RUSSELL

COURT FROM WHICH APPEALED: LEE COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: MARTHA BOST STEGALL

ATTORNEYS FOR APPELLEES: JOSEPH C. LANGSTON

RONALD MICHAEL

RICHARD BOWEN

MICHAEL D. GREER

JIMMY D. SHELTON

NATURE OF THE CASE: CIVIL - PERSONAL INJURY

DISPOSITION: REVERSED AND RENDERED - 09/02/1999

MOTION FOR REHEARING FILED: 09/30/99; denied 12/02/99

MANDATE ISSUED:12/09/99


**EN BANC.**


**WALLER, JUSTICE, FOR THE COURT:**


## STATEMENT OF THE CASE


¶1. These four consolidated interlocutory appeals arise out of an automobile wreck which resulted in the deaths of five persons and injuries to five other people. After the one-year Tort Claims Act statute of limitations had run, the Circuit Court of Lee County, Mississippi, issued orders granting leave for the representatives of Marcus Dixon, deceased, and Yusef McKinley, deceased, to join in the complaints which had been timely filed against the City of Tupelo by the representatives of other persons killed in the accident. Thereafter, the circuit court denied the City of Tupelo's motion for judgment on the pleadings which sought dismissal of these claims based upon

failure to comply with the pre-suit notice of claim and the statute of limitations requirements of Miss. Code Ann. § 11-46-11 (Supp. 1998).[(1)] After the circuit court certified its orders, the City of Tupelo petitioned for interlocutory appeal. This Court, by way of four separate orders, granted the interlocutory appeals to consider the following issues assigned by the City of Tupelo:

> **I. Did the trial court err in granting leave to Willie Paul Dixon and Annie Pearl Stevens for the filing of wrongful death lawsuits against the City of Tupelo for the deaths of Marcus Dixon and Yusef McKinley on the reasoning that the lawsuit was not barred by either the Notice of Claim provision or the running of the limitations period set forth in the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 1998).**

> **II. Did the trial court err in denying the City of Tupelo's motion for judgment on the pleadings filed in the Dixon and McKinley lawsuits, which motions sought dismissal of the lawsuits on the basis that they were barred by the notice of claim provisions of Miss. Code Ann. § 11-46-11 (Supp. 1998) and by the running of the applicable limitations period.**

## STATEMENT OF THE FACTS

¶2. The civil actions underlying these appeals arose from a vehicular accident which occurred in the late evening hours of January 12, 1996, on Coley Road in Tupelo, Mississippi. As a result of freezing conditions, a large pool of water turned into a sheet of ice that covered both lanes of traffic on Coley Road. The patch of ice triggered a three-car accident in which five people were killed and five people were injured. Those injured were Heather J. Martin, William Greg Smith, Delmontez Magee, Pamela Louise Harris and Lorie Lee Armstrong. Those killed in the wreck were Lisa May, Chris Hughes, Calandra C. Ivy, Yusef McKinley and Marcus Dixon. The representatives of all of the accident victims except for Yusef McKinley and Marcus Dixon timely and properly filed separate notices of claim with the mayor of the City of Tupelo in accordance with what is commonly referred to as the Mississippi Tort Claims Act. *See* Miss. Code Ann. § 11-46-11(2) (Supp. 1998). The plaintiffs claimed that the City was responsible for the accident because it failed to maintain properly the drainage along Coley Road, leading to the accumulation of the thin sheet of ice on the road.

¶3. Thereafter, eight separate lawsuits were timely filed by each of the persons who had served the City with a notice of claim. The eight actions were then consolidated in the circuit court under the lead action of Heather J. Martin, et al. v. City of Tupelo. Following denial of the City's motion for summary judgment based on sovereign

immunity, the lawsuits were settled. At the time of settlement, the City had not been served with a notice of claim concerning the deaths of either McKinley or Dixon. On August 22, 1997, more than 19 months after the accident, Annie Pearl Stevens, McKinley's representative, filed a motion for leave to file a complaint and join the action filed by the representative of Chris Hughes in the Lee County Circuit Court. Dixon's representative, Willie Paul Dixon, filed an identical motion on November 4, 1997, seeking to join the lawsuit filed by the representative of Lisa May.

¶4. The two motions asserted that McKinley and Dixon, who died as a result of the same accident complained of in the pending lawsuits, were mistakenly not included in the other lawsuits. The motions asserted that joinder would protect McKinley and Dixon from possible prejudice and avoid duplication of discovery and multiple litigation. They further asserted that the City would suffer no prejudice. The City opposed the motions on the grounds that any lawsuit on behalf of McKinley or Dixon was barred because no one had filed a notice of claims on behalf of either plaintiff, and, in any event, the statute of limitations had run as to both lawsuits.

¶5. The trial judge, Honorable Frank A. Russell, granted the motions of both McKinley and Dixon. He found that the City had actual notice of both claims within one-year of the accident and that the City would suffer no prejudice. As to McKinley, the trial judge held that the failure to file timely was due to the excusable neglect of his attorneys, while Dixon's failure to file was due to the excusable neglect of his heir. Judge Russell ruled that allowing joinder was "within the sound discretion of the trial court."

¶6. The trial court distinguished *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss. 1997), on the basis that *Lumpkin* involved a single plaintiff who failed to notify the City of his possible claim. As a result the City was unable to foresee that it would have to mount a defense. Judge Russell also relied on *Womble v. Singing River Hosp.*, 618 So. 2d 1252 (Miss. 1998), which is discussed further *infra*. The lower court found that the City had actual notice and that no time or resources would be wasted by defending the McKinley and Dixon lawsuits. Therefore, the circuit court granted the representatives of McKinley and Dixon leave to file complaints against the City and subsequently amended its orders to certify them for interlocutory appeal.

¶7. On October 16 and November 13, 1997, respectively, the representatives of McKinley and Dixon filed their complaints which asserted wrongful death claims arising from the January 12, 1996, accident. However, the complaints failed to comply with the notice of claim requirement of § 11-46-11. In its answer, the City admitted that the accident occurred on January 12, 1996, but denied liability and asserted as defenses the failure to comply with the notice of claim and statute of limitations provisions of § 11-46-11. At the same time, the City moved for judgment on the

pleadings pursuant to M.R.C.P. 12(c) on the notice of claim and statute of limitations issues. The circuit court denied those motions in separate one-page orders filed on December 18, 1997, and certified the orders for interlocutory appeal on the issue of whether the actions were barred by the notice of claim and statute of limitations provisions of the Tort Claims Act. This Court then granted the City's petitions for interlocutory appeal and consolidated these four interlocutory appeals.

## DISCUSSION OF THE LAW
## I. INTERVENTION.

¶8. In granting the representatives of McKinley and Dixon leave to file their complaints in the pending consolidated actions, the circuit court did not discuss intervention or cite M.R.C.P. 24 which, as its comment states, "governs the rights of a stranger to the action who desires to be joined." Rule 24 provides in pertinent part:

> **(a) Intervention of Right.** Upon timely application, anyone shall be permitted to intervene in an action:
>
> > (1) when a statute confers an unconditional right to intervene; or
> >
> > (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action:
>
> > (1) when a statute confers a conditional right to intervene; or
> >
> > (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> * * *
>
> > In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
>
> **(c) Procedure.** A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a

statute gives a right to intervene. . . .

M.R.C.P. 24.

¶9. As the language of Rule 24 suggests, a trial court has considerable discretion in ruling on a motion to intervene. *Cummings v. Benderman*, 681 So. 2d 97, 101 (Miss. 1996); *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 381 n.1 (Miss. 1987). As a result, we review such a ruling using an abuse of discretion standard of review. *Perry County v. Ferguson*, 618 So. 2d 1270, 1271-72 (Miss. 1993); *Pittman*, 501 So. 2d at 383.

¶10. Here, the motions did not identify whether intervention of right or permissive intervention was sought. Further, the motions did not attach copies of the proposed complaint as required by Rule 24(c). The motions did explicitly reference the January 12, 1996, accident date.

¶11. Regardless of whether intervention of right or permissive intervention is sought, in either case the motion must be timely. As we noted in *Pittman*, timeliness has no fixed meaning and should normally be determined after considering the following four factors:

> (1) the length of time during which the would be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;

> (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;

> (3) the extent of any prejudice that the would be intervenor may suffer if his petition for leave to intervene is denied; and

> (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Pittman*, 501 So. 2d at 382. We went on to clarify that

> likelihood of success on the merits of the claim intervention is not a factor which should be considered in determining whether a motion for leave to intervene is timely or should otherwise be granted, except only in the limited sense that the complaint in intervention should state a claim upon which relief can be granted . . . .

*Id*. It is that "threshold test" which we consider today. *Id.*

¶12. On their faces, the motions filed by the representatives of McKinley and Dixon on August 22 and November 4, 1997, respectively, sought leave to file a complaint seeking wrongful death tort damages against the City arising from the January 12, 1996, accident.

¶13. The MTCA provides the exclusive remedy for a party injured by a governmental entity's acts or omissions. *Brewer v. Burdette*, No. 97-CA-01016-SCT, 1999 WL 216842, at *2 (Miss. Apr. 15, 1999) (motion for rehearing pending). The MTCA states:

> The remedy provided by this chapter against a governmental entity or its employee is **exclusive** of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and **any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter**, notwithstanding the provisions of any other law to the contrary.

Miss. Code Ann. § 11-46-7(1) (Supp. 1998) (emphasis added). Clearly, these appeals involve claims against a governmental entity which are subject to the provisions of the MTCA.

¶14. The MTCA provides a one-year statute of limitations for lawsuits brought against governmental entities. The time period is tolled for 95 days upon the filing of a pre-suit notice of claim. The statute of limitations provides:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days. The limitations period provided herein shall control and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations which would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

Miss. Code Ann. § 11-46-11(3) (Supp. 1998). We have enforced this one-year statute of limitations on a number of occasions. *E.g.*, *State v. Dampeer*, No. 97-IA-00276-SCT, 1999 WL 418804 (Miss. June 24, 1999); *Mississippi Dep't of Pub. Safety v.*

*Stringer*, No. 97-IA-00187-SCT, 1999 WL 353025 (Miss. June 3, 1999); *Marcum v. Hancock County Sch. Dist*., No. 97-CA-00916-SCT, 1999 WL 353073 (Miss. June 3, 1999)*.

¶15. The representatives of McKinley and Dixon filed their motions to join on August 25, 1997, and November 5, 1997, respectively. The accident which gave rise to these claims occurred on January 12, 1996. The one-year statute of limitations in § 11-46-11(3) expired on January 13, 1997. Filing a notice of claim would have tolled the statute of limitations for 95 days. Miss. Code Ann. § 11-46-11(3). Thus, had a notice of claim been properly submitted, the statute of limitations would have finally expired on April 18, 1997. The McKinley and Dixon representatives had filed neither a notice of claim nor a complaint by that date. Because they did not comply with the statute of limitations established in the MTCA, the intervention motions were, on their faces, untimely as barred by the applicable statute of limitations and, thus, did not state a claim upon which relief could be granted.

¶16. The McKinley and Dixon representatives make several similar arguments as to why the orders of the lower court should be affirmed. First, they argue that the City waived sovereign immunity by purchasing liability insurance in excess of the amounts provided for in Miss. Code Ann. § 11-46-15 (Supp. 1998).[2] Second, they assert that because the City was engaged in a proprietary function, sovereign immunity is not applicable. Combining these two arguments, McKinley and Dixon contend that Miss. Code Ann. § 15-1-49 (1995), the general three-year statute of limitation, rather than the one-year limitation period of the MTCA, controls their respective causes of action. Even assuming the MTCA applies, McKinley and Dixon assert that the City had sufficient notice of the claim and suffered no prejudice as a result of the late filing. This is essentially the position taken by the circuit court in granting the motions to join.

¶17. Immunity from suit for damages in excess to the amounts provided in § 11-46-15 is waived only to the extent of the amount of excess liability insurance coverage held by the governmental entity. Miss. Code Ann. § 11-46-17(4) (Supp. 1998). Contrary to this provision, the representatives of McKinley and Dixon argue that purchasing liability insurance somehow removes claims from the requirements of the MTCA. They rely on *Lee County Bd. of Supervisors v. Fortune*, 611 So. 2d 927 (Miss. 1993), and *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900 (Miss. 1993). Both of these cases involved interpretation of law prior to the effective date of the current MTCA and are inapposite to the current litigation.

¶18. Citing our recent decision in *L.W. v. McComb Separate Mun. Sch. Dist.*, No. 97-CA-01465-SCT, 1999 WL 174267, at *9 (Miss. Mar. 31, 1999) (motion for rehearing pending), the McKinley and Dixon representatives argue that we held that, in an MTCA case, the purchase of insurance waives sovereign immunity to the extent of

the policy. While this is true, **L.W.** is distinguishable in that it dealt with the application of the exemptions from liability statute, §  11-46-9, and did not address the effect of the purchase of insurance on the notice of claim and statute of limitations defenses under the MTCA. Thus, **L.W**. is not controlling here.

¶19. Prior to the enactment of the MTCA, we did use the governmental/proprietary function test in applying sovereign immunity to municipalities. *See, e.g.,* **Parker v. City of Philadelphia**, 725 So. 2d 782, 784 (Miss. 1998); **White v. City of Tupelo**, 462 So. 2d 707, 708 (Miss. 1984). However, with the enactment of the MTCA, that test is no longer applicable to claims subject to the MTCA except to the extent which it may be incorporated in the provisions of the MTCA. We find no such incorporation. Therefore, we reject the argument that we must apply that test here to find the MTCA and its statute of limitations provision inapplicable.

¶20. Relying on **Womble v. Singing River Hosp.**, 618 So. 2d 1252 (Miss. 1993), the trial judge allowed McKinley's representative to join the Hughes complaint and Dixon's representative to join the complaint filed by May's representative. In **Womble**, the trial court allowed a plaintiff to add additional defendants after the statute of limitations had run. **Id**. at 1266-68. The Court relied on M.R.C.P. 15(c) in reaching its conclusion that the defendants would suffer no prejudice from being added after the statute had run. **Id**.

¶21. The obvious problem here is that neither representative filed an initial pleading within the one-year statute of limitations. Thus, there is nothing for the amendment to relate back to as is required by our rules. *See* M.R.C.P. 15(c). The instant case is completely different from **Womble** where the plaintiff had timely filed a complaint against at least some of the defendants and claims against other defendants related back to that original filing. **Id**. at 1267-68. The representatives for McKinley and Dixon were not plaintiffs in the original eight lawsuits which were filed. Instead, they filed their own separate wrongful death lawsuits outside the statute of limitations. Because they did not file before the one-year statute had run, their claims are barred by the statute of limitations.

¶22. The representatives for McKinley and Dixon argue that the City had actual notice of the claims and was preparing a defense before the statute of limitations had run. The **Womble** Court relied in part upon a similar argument advanced by the plaintiff. **Womble**, 618 So. 2d at 1267. The distinguishing factor is that in the instant case there is no mistake in the identity of the parties, as was the case in **Womble**. **Id**. The only mistake here is that either the parties or their lawyers failed to file a complaint within the appropriate statute of limitations. **Womble** is of no consequence in the cases at bar.

¶23. Assuming for the sake of argument that a notice of claim had been timely filed

with the City, the representatives of McKinley and Dixon would have had to file their lawsuits no later than one-year plus 95 days after January 12, 1996. Since their motions and complaints were all filed long after that deadline, we have no need to address here the notice of claim requirement and our recent substantial compliance standard set forth in ***Reaves v. Randall***, 729 So. 2d 1237 (Miss. 1998), and ***Carr v. Town of Shubuta***, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. Feb. 11, 1999).

¶24. The parties do not provide nor can we find any instance where"excusable neglect" has tolled or otherwise stayed a statute of limitations. That today's decision works to preclude McKinley's and Dixon's representatives' day in court is of no consequence. ***Watters v. Stripling***, 675 So. 2d 1242, 1244 (Miss. 1996) (*citing Traina v. United States*, 911 F.2d 1155 (5th Cir. 1990)). There is nothing in the record to indicate that the representatives' failure to file was anything other than a result of their own inactions or omissions.

¶25. For these reasons, we conclude that the motions to intervene were not timely on their faces and failed to state a claim upon which relief can be granted. As a result, the circuit court abused its discretion in granting leave to the representatives of McKinley and Dixon to file their complaints, and we reverse and render on this issue.

## II. JUDGMENT ON THE PLEADINGS.

¶26. We have noted that the motion for judgment on the pleadings under M.R.C.P. 12(c) serves a similar function to the Rule 12(b)(6) motion to dismiss for failure to state claim. ***Holland v. Kennedy***, 548 So. 2d 982, 984 n.3 (Miss. 1989). Thus, it raises a question of law for the circuit court which we review *de novo.*

¶27. Given our disposition above of the timeliness issue on the intervention question, it necessarily follows that we conclude that the two complaints were not timely in that they are barred by Miss. Code Ann. § 11-46-11(3) (Supp. 1998), the applicable one-year statute of limitations. Thus, the circuit court erred as a matter of law in denying the City's motions for judgment on the pleadings on the statute of limitations issue. We reverse and render on this issue.

## CONCLUSION

¶28. Although the result is harsh, the representatives of McKinley and Dixon did not file their motions or complaints within the applicable statute of limitations. M.R.C.P. 15(c) affords no relief as the causes of action for the deaths of McKinley and Dixon were not preserved with an initial filing and thus cannot be saved by "joining" a third-party's timely filing. Therefore, their respective wrongful death actions are barred by Miss. Code Ann. § 11-46-11(3) (Supp. 1998). The orders of the lower court allowing the representatives of McKinley and Dixon to file wrongful death actions against the

City of Tupelo are reversed and rendered because of the failures of the McKinley and Dixon representatives to comply with the time limitations set forth in the MTCA. Likewise, the orders of the lower court denying the City's motions for judgment on the pleadings are reversed, and we render judgment here for the City finally dismissing the complaints and actions with prejudice as barred by the statute of limitations.

¶29. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶30. I respectfully dissent.

¶31. With the majority decision today, the waters surrounding the Mississippi Tort Claims Act have once again been clouded. The legislature has stated that a governmental entity is allowed to waive its sovereign immunity up to the amount of insurance it contracted prior to an event, thus taking it out of the procedures required under the Act when there is no insurance.

¶32. When a public entity is benevolent enough to purchase insurance for the protection of the entity and potential claimants, it should be taken out of the Act altogether, up to the amount of that policy. If an entity chooses to come out from under the protection of the legislatively created umbrella for a "bigger" one provided by an insurance company, it should be barred from claiming any privileges or defenses under the Act, up to the amount of coverage. Consequently, an insurance provider has no right to gain shelter under the very umbrella created by the Act. That right was created for governmental entities and may not be delegated.

¶33. To better understand why a governmental entity relinquishes the right to claim immunity when it purchases liability insurance, a brief look at the life, death, and resurrection of sovereign immunity in Mississippi is necessary.

¶34. In 1982, this Court determined that absolute sovereign immunity was out of date in modern society and modern legal concepts. *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982). Ruling that the control and policing of sovereign immunity was a legislative and not judicial responsibility, this Court abrogated such immunity just as it had previously created it. *Pruett*, 421 So. 2d at 1047. Several years later the Mississippi Legislature reciprocated by enacting an exhaustive tort claims act, providing for a limited waiver of sovereign immunity. Miss. Code Ann. §§ 11-46-1 et

seq. (Supp. 1998).

¶35. In response to our abrogation of our judicially created sovereign immunity the Legislature created the Mississippi Tort Claims Act to allow citizens to be compensated for torts committed against them and to hold the public entity accountable. It set up certain procedures to follow when no insurance is obtained so the public entity will be aware of a claim, have it investigated to determine their liability and consider the possibility of settlement if there is such liability. However, as had been done prior to the enactment of the Act, the Legislature authorized the public entity to waive the sovereign immunity up to the amount of insurance.

¶36. In 1993,[(3)] when the Mississippi Tort Claims Act became effective, it was subject to a list of substantive and procedural requirements. The Act provided the exclusive civil remedy against a governmental entity or its employees for acts or omissions giving rise to a tort suit. Miss. Code Ann. § 11-46-7(1) (Supp. 1998); *L.W. McComb Separate Mun. Sch. Dist.*, No 97-CA-01465-SCT, 1999 WL 174267, at *2 (Miss. March 31, 1999) (pending on motion for rehearing); *Moore v. Carroll County, Mississippi*, 960 F. Supp. 1084, 1088 (N.D. Miss. 1997).

¶37. Prior to this time when there was created judicial sovereign immunity was waived up to the amount of insurance. In other words, the public entity (insurance company) was treated like anyone else. The company could not claim immunity or any other defense personal to its insured.

¶38. Before the enactment of the Tort Claims Act, a defendant sovereign was estopped from asserting sovereign immunity up to the amount of insurance purchased. *Churchill v. Pearl River Basin Dev. Dist*., 619 So. 2d 900, 906 (Miss. 1993). The holding was later codified in Miss. Code Ann. § 11-46-16(2) but in 1993 expired and became of no force.[(4)] The only insurance provision we are left with is found in Miss. Code Ann. § 11-47-17 (Supp. 1998), which became effective April 1, 1993. Pursuant to subsections (1) and (3) the "Tort Claims Fund" was created in the State Treasury and all political subdivisions were required to provide insurance or reserves to adequately cover risks of claims and suits for which they may be liable.

¶39. Governmental entities are allowed to purchase liability insurance over the limits provided for in §11-46-15 (Supp. 1998). In simple terms, an entity may waive its sovereign immunity but it does **so only** up to the amount of the policy. If an entity chooses to purchase insurance, the Tort Claims Act is clearly inapplicable.

¶40. Whenever a public entity contracts with an insurance company to provide liability insurance, future claims against that entity are handled altogether by the insurance company. The insurance provider is thereafter responsible for investigating the circumstances surrounding the claim, making a determination of liability, and deciding

whether such claims will be paid. Just as the entity has surrendered the defense of sovereign immunity, the insurance company cannot come into court and claim that defense. It is personal to the public entity.

¶41. In this case as a practical matter, as is in most Tort Claim Act cases, a plaintiff proceeds against a public entity without knowledge of any insurance policies and therefore notice is given to the entity. But once it is determined that there is in fact insurance, the claim is taken out of the province of the Act and proceeds like any other tort case. As a result, there is no need to give notice to an insurance company that is already aware of the action, much less one already investigating and developing a defense. *See **Smith County v. McNeil**, No. 97-IA-00748-SCT*.

¶42. The majority acknowledges that the City of Tupelo has a one million dollar insurance policy. Therefore, the real party of interest in this case is the insurance company and not the City of Tupelo. The insurance company cannot be allowed to settle several of the claims and then seek immunity from others. Especially immunity which it does not possess. Sovereign immunity cannot be transferred to the insurance carrier; and therefore, the one-year statute of limitations provided for under the Act is inapplicable in this case.

¶43. Once the public entity contracts and turns over the responsibility to the insurance company to handle the claims against it, it has waived its immunity up to the policy limits and the scope and procedure of the act do not apply. It is no different from any other wrongful death or personal injury tort case in Mississippi and the general 3 year statute of limitations should apply, thus making the appellees' filing timely and allowing the case to continue on to be heard by a jury. We should not apply the one-year statute of limitations since immunity is waived and the real party is the insurance company. After all, the public entity contracted for the insurance company to adjust the claim and if a catastrophic injury occurs and a claim is made and denied one and a half years later, then another part of the government will have to pay the bills. The public entity did not get what it paid for. The citizen did not get the benefit of it. The only one who obtains a windfall is the insurance company. Accordingly, I dissent.

### SULLIVAN, P.J., JOINS THIS OPINION.

1. Effective March 25, 1999, Section 11-46-11 was amended by 1999 Miss. Laws ch. 469 to clarify the notice of claim procedure in that statute. However, this amendment has no application to the facts of this case.

2. Although not established in the record, the City admits in its briefs that it had $1 million in liability insurance which is applicable to the subject accident.

3. Miss. Code Ann. § 11-46-5 provided for a waiver of sovereign immunity as to the

State from and after July 1, 1993, and for political subdivisions of the state from and after October 1, 1993.

4. Miss. Code Ann. § 11-46-16(2) expired from and after July 1, 1993, for the state and October 1, 1993, for the political subdivisions.