**Ezell THOMAS, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO., J.R. Supermarket, New Deal Supermarkets, Inc. and "A" Through "Z" entities (M.R.C.P.9(h) Defendants), Defendants.**

**No. 5:97CV14 BrS.**

United States District Court, S.D. Mississippi, Western Division.

June 1, 1998.

Robert A. Pritchard, Pascagoula, MS, for Ezell Thomas.

Joseph R. Colingo, Stephen W. Burrow, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, MS, for R.J. Reynolds Tobacco Co.

Brooke Ferris, III, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, MS, for J.R. Supermarket, New Deal Supermarket, Inc.

## ORDER

BRAMLETTE, District Judge.

This matter is before the Court on motion of the defendants, R.J. Reynolds Tobacco Company, J.R. Supermarket, and New Deal Supermarkets, Inc., for Reconsideration of This Court's September 15, 1997 Memorandum Opinion and Order (docket entry # 14). After reviewing the defendants' motion, the applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds as follows:

On September 29, 1997, this Court entered a Memorandum Opinion and Order remanding the present action to the Circuit Court of Jefferson County, Mississippi. The Court found that there was a *possibility* that the plaintiff could establish a cause of action against the instate defendants in state court. Consequently, the Court found that remand was appropriate. *See Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983).

The defendants filed the present motion, contending that the defective design claim is the only claim alleged against the in-state retailers. Moreover, according to the defendants, pursuant to Mississippi statutory law and Fifth Circuit precedent regarding such a claim, there is *no* possibility of recovery. In support of this contention, the defendants point specifically to § 11–1–63(b) and (f)(11) of the Mississippi Code and *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir. 1996).

### A. INHERENT CHARACTERISTICS ·

■ Section 11–1–63(b) of the Mississippi Code provides:

A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

The defendants contend that the design for which the plaintiff seeks to recover damages is an inherent characteristic of cigarettes. In support of this contention, the defendants cite a district court case from the Northern District of Ohio. *See Paugh v. R.J. Reynolds Tobacco Co.,* 834 F.Supp. 228 (N.D.Ohio 1993). However, the plaintiff in *Paugh* was "essentially claiming that cigarettes generically are defective." *Paugh,* 834 F.Supp. at 230. Such a contention allowed the *Paugh* court to rely on comment (1) to § 402A. *See* Restatement (Second) of Torts § 402A cmt. i (1965). As will be discussed *infra,* the plaintiff in the present case is not alleging that "cigarettes are generically defective"—he is

alleging that the defendants manipulated the content of what should have been "good tobacco." *See id.*

In addition to the "inherent characteristics" rule provided in § 11–1–63(b), the defendants point to *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir.1996). In *Allgood,* the Fifth Circuit held that "the dangers of cigarette smoking have long been known to the community." *Allgood,* 80 F.3d at 172.[1] Therefore, according to the defendants, the design for which the plaintiff seeks to recover damages is an inherent characteristic of cigarettes, and ordinary consumers have known of the dangers inherent in this design for years. Consequently, according to the defendants, there is no possibility of recovery under a design defect analysis.

At first blush, this argument appears sound.[2] In fact, even the drafters of the comment to section 402A anticipated such a defense. Paragraph I of the comment to section 402A of the Restatement Second of Torts provides in part:

The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.* Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Restatement (Second) of Torts § 402A cmt. i (1965) (emphasis added). In the present case, however, the plaintiff has not filed suit against the defendants for selling "good tobacco." Specifically, in paragraph 31 of the complaint, the plaintiff states:

In addition to the carcinogenic nature of tobacco itself, several thousand compounds have been found in cigarette smoke. These Include, for example, carbon monoxide, nicotine, carbon dioxide, benzene, formaldehyde, Polonium–210, ammonia, nicotine sulfate, freon 11, hydrogen cyanide and certain liver toxins known collectively as "furans"; *some of these have been deliberately, added by the Tobacco Companies*

(Pl.'s Compl. at 15) (emphasis added). In other words, the plaintiff is arguing that these ingredients are not inherent characteristics of good tobacco, but rather are harmful ingredients added by the defendants.[3] The

---

1. While the *Allgood* decision was based on Texas state law, the Court is aware that the Mississippi Supreme Court has voiced a similar opinion. *See Horton v. American Tobacco Co.,* 667 So.2d 1289 (Miss.1995). The Court also notes that the Mississippi Supreme Court has not stated its opinion with the same force or directness as the *Allgood* court. Nevertheless, for purposes of the present motion, the Court will assume that the Mississippi Supreme Court would find that the dangers of smoking have long been known to the community.

2. The Court reminds the parties that in ruling on a motion to remand, the Court makes no determination whatsoever regarding the merits of the action. This Court is not concerned with which party is or is not likely to prevail in the end. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir.1995) ("We do not determine whether the plaintiff will actually prevail on the merits of the claim . . . ."). The Court is only concerned with whether the plaintiff possibly has a claim against the in-state retailers.

3. An argument similar to the argument made by the plaintiffs was recognized by the United States District Court for the Eastern District of Louisiana in *Scott v. American Tobacco Co.,* 1997 WL 749415 (E.D.La. Dec.2, 1997). In that case, as in the present case, the defendants cited *Lonkowski v. R.J. Reynolds Tobacco Co.,* 1996 WL 888182 (W.D.La.) for the proposition that the dangers of smoking were well known, and thus, the plaintiffs had no possibility of recovery against the non-diverse retailers. However, the *Scott* court explained:

The cases cited by the defendants are distinguishable. In *Lonkowski v. R.J. Reynolds Tobacco Co.,* 1996 WL 888182 (W.D.La.1996) (J. Trimble), the plaintiffs apparently did not allege the secretive manipulation of the nicotine level in tobacco, but relied solely on nicotine's basic addictiveness and cancer-causing qualities. Judge Trimble also referenced *Scogin v. Smith,* 612 So.2d 739, 741 (La.App. 1st Cir. 1992), which defined a redhibitory defect as a "physical imperfection or deformity, a lacking of a necessary competent (sic) or level of quality." This Court considers the claim of deliber-

Court finds that this argument provides the plaintiff with at least the possibility of proving the product was defective.[4]

## B. FEASIBLE DESIGN ALTERNATIVE

■ The defendants also argue that the Court Should reconsider its opinion remanding the present action because the plaintiff has not provided a feasible design alternative. Section 11–11–63(f)(ii) provides:

In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer of product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

First, the Court notes that the plaintiff does not have to *prove* a feasible design alternative at this stage in the litigation. As has been discussed, the plaintiff need only show that a possibility exists that he may prevail on his claim. *See B., Inc. v. Miller*

*Brewing Co.*, 663 F.2d 545, 546 (5th Cir. 1981); *Bolivar v. R & H Oil and Gas Co., Inc.*, 789 F.Supp. 1374, 1377 (S.D.Miss.1991). As to the feasible design alternative, the plaintiff notes in his motion to remand that "[i]t is readily seen that a better and feasible design is not to add or manipulate the nicotine content of the product." Clearly, since the plaintiff is alleging that the defendants added harmful ingredients to the tobacco, it is possible that the plaintiff can prove a feasible design alternative would be to avoid adding such ingredients.

Therefore, the Court finds that it is possible that the plaintiff will be able to establish a cause of action against the in-state defendants in state court, arguing that the cigarettes at issue were defectively designed so as to render them unreasonably dangerous.[5] Accordingly, the Court orders that the present action should be remanded, and the defendants' Motion for Reconsideration of This Court's September 15, 1997 Memorandum Opinion and Order (docket entry # 14) is hereby DENIED.

ate nicotine overload in the tobacco to be a "deformity" which, to the mind of a reasonable buyer, could divest the cigarette of a "necessary competent or level of quality."

4. The Court notes that whether the Court applies the risk utility analysis or the consumer expectations test, it is clear that there is at least a possibility that the plaintiff will be able to show that the product was unreasonably dangerous. The Court finds that the plaintiff may possibly be able to prove that the risk of using tobacco "tainted" with the ingredients described *supra* outweighs the utility of such a product. Also, the Court finds that the plaintiff may possibly be able to prove that the consumer would not expect tobacco to be as dangerous as tobacco "tainted" with those same ingredients.

5. In the present motion, the defendants request that the Court certify the issue of retailer liability for interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). However, since the plaintiff alleges that the defendants tainted

the tobacco with harmful ingredients rather than merely alleging that the cigarettes are generically defective, the Court does not believe that the present issue "provides substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b). When a plaintiff files suit contending that the defendants have intentionally contaminated the tobacco, the "inherent characteristics" defense is clearly weakened. Certainly, the defense is weakened enough to allow for a possibility of a claim to exist. The Court does recognize an apparent difference of opinion among various districts regarding in-state retailer liability; however, none of these courts were faced with the issue of intentional contamination. In fact, virtually all of the decisions noting a disagreement regarding in-state retailers are addressing Louisiana state law and are of little assistance in the present case. *See e.g., Vickrey v. R.J. Reynolds Co.*, No. 96–2612 (W.D.La. April 3, 1997); *Dezire Junior Hebert, et ux. v. United States Tobacco Co., et al.*, No. 96–1308 (W.D.La. Sept. 25, 1996). Consequently, the Court does not believe certification is appropriate.