# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2001-CA-00384-SCT

*CHRISTINE LANE AND CORDELIA GRIFFIN,*
*WRONGFUL DEATH BENEFICIARIES OF WILLIE*
*LAWRENCE MUSE, DECEASED*

*v.*

*R. J. REYNOLDS TOBACCO COMPANY; PHILLIP*
*MORRIS USA INC.; CORR-WILLIAMS COMPANY,*
*INC., SUCCESSOR BY MERGER TO CORR-*
*WILLIAMS TOBACCO COMPANY, AND C. W. C.*
*ACQUISITION COMPANY; HATTIESBURG*
*GROCERY COMPANY; AND BROWN &*
*WILLIAMSON TOBACCO CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2000 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN HUBERT ANDERSON |
| ATTORNEYS FOR APPELLEES: | MICHAEL W. ULMER |
| | LEWIS W. BELL |
| | STEPHANIE E. PARKER |
| | JOHN F. YARBER |
| | MICHAEL B. WALLACE |
| | REBECCA L. HAWKINS |
| | WALKER (BILL) JONES, III |
| | SHERYL BEY |
| | STUART G. KRUGER |
| | TIFFANEE N. WADE |
| | BROOKE FERRIS |
| | JON MARK WEATHERS |
| | ROBERT L. GIBBS |
| | ANDREA LA'VERNE FORD EDNEY |
| | WILLIAM E. HUFFMAN, JR. |
| | WILLIAM L. DURHAM, II |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED- 05/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

*CHRISTINE LANE AND CORDELIA GRIFFIN,
WRONGFUL DEATH BENEFICIARIES OF WILLIE
LAWRENCE MUSE, DECEASED*

*v.*

*LIGGETT GROUP, INC., LIGGETT & MYERS, INC.,
AND BROOKE GROUP LTD.*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/29/2001 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN HUBERT ANDERSON |
| ATTORNEYS FOR APPELLEES: | JESSE LEE HOWELL |
| | THOMAS A. COOK |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED-05/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The Court consolidated two appeals regarding related products liability suits against cigarette

manufacturers, distributors, and retailers.  Both suits were filed in the Forrest County Circuit Court by the

wrongful death beneficiaries of Willie Lawrence Muse.  The first suit, No. 2001-CA-00384, was dismissed

on the pleadings pursuant Miss. R. Civ. P. 12(c). The second suit, No. 2001-CA-01032, was dismissed

on the pleadings pursuant to Miss. R. Civ. P. 54(b).

¶2.    There are two issues on appeal: *First*, did the court err in denying the plaintiffs' motion for leave to amend; *Second*, did the court err by holding that the plaintiffs' did not state a claim upon which relief could be granted. Finding no error, we affirm.

### FACTS

¶3.    Willie Lawrence Muse smoked cigarettes from 1943 until he died from squamous cell carcinoma of the mouth on October 10, 1997.

¶4.    On November 30, 1998, Muse's daughter, Christine Lane ("Lane"), filed a wrongful death suit in the Circuit Court of Forrest County against several manufacturers, distributors and retailers of cigarettes ("Liggett"). She twice amended her complaint: first on December 3, 1998, joining additional defendants; second, on December 4, 1998, adding Cordelia Griffin as a plaintiff.

¶5.    Following various procedural and discovery requests, on September 12, 2000, Liggett filed a motion for judgment on the pleadings pursuant Miss. R. Civ. P. 12(c). Citing the Mississippi Product Liability Act (MPLA) codified in Miss. Code Ann. § 11-1-63 (2001), they argued that the claims failed as a matter of law because the alleged injuries to Muse were caused by an inherent characteristic of cigarettes which is a generic aspect of the product that cannot be eliminated without compromising the product's usefulness or desirability, and that this aspect is recognized by the ordinary person with the ordinary knowledge common to the community.

¶6.    Counsel for Lane orally contested the motion at a hearing on December 5, 2000. At the conclusion of the hearing, counsel requested five days to submit a response to the court in opposition to Liggett's motion, which he failed to do. On December 18, 2000, the trial judge granted the defendants' motion and entered a judgment on the pleadings.

¶7. On December 28, 2000, counsel for Lane filed both a Motion for Order to Alter or Amend and a Motion for Order Allowing Plaintiffs to Amend. On January 31, 2001, a hearing was held on the motions. On February 1, 2001, the trial court denied the motions on and dismissed the complaint. Lane filed a "Second Amended Complaint" that same day. The amended complaint filed after the dismissal alleged, in addition to the allegations contained in the previous complaint, that the defendants conspired to conceal the addictive nature of nicotine and any harmful effects of smoking.

¶8. The second of the consolidated cases parallels the first. On October 9, 2001, Lane refiled the amended complaint from February, but substituting new defendants ("RJR"). Citing the previous decision of the trial court, RJR responded by filing motion for judgement on the pleadings based on theories of collateral estoppel and res judicata. Following a hearing, the trial judge granted the motion and dismissed the matter.

## STANDARD OF REVIEW

¶9. There are two standards of review applicable to this appeal. First, motions for leave to amend are within the discretion of the trial court. A denial of motion for leave to amend is reviewed under the abuse of discretion standard and not reversed unless the trial court abused its discretion. *Frank v. Dore* 635 So.2d 1369, 1375 (Miss. 1994) (citing *Bourn v. Tomlinson Interest, Inc.* 456 So.2d 747,749 (Miss. 1984); *McDonald v. Holmes* 595 So.2d 434, 436 (Miss. 1992)).

¶10. Second, the Court employs the broader de novo standard in determining whether a circuit court erred in granting a Rule 12(c) motion for judgment on the pleadings. *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So.2d 1206, 1210 (Miss. 2001) (citing *City of Tupelo v. Martin*, 747 So.2d 822, 829 (Miss. 1999)). A Rule 12(c) motion for judgment on the pleadings serves a similar function to the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* Unlike

4

summary judgment, both Rule 12(b)(6) and Rule 12(c) are decided on the face of the pleadings alone. *Hartford Cas. Ins. Co.*, 826 So.2d at 1210. Because the granting of a judgment on the pleadings raises a question of law, the de novo standard applies. *Id*.

## DISCUSSION

### I.   DID THE CIRCUIT JUDGE ERR IN DENYING THE PLAINTIFFS' MOTION TO AMEND THEIR PLEADINGS.

¶11.    Lane claims that she had a right to amend her complaint within 30 days after the first dismissal. Citing Miss. R. Civ. P. 15(a), she argues that the trial judge improperly denied this right. At the time of the trial court's decision, Rule 15(a) stated, in part:

> On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), thirty days leave to amend shall be granted, provided matters outside the pleadings are not presented at the hearing on the motion. Otherwise a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

Miss. R. Civ. P. 15(a). The Court agrees, but notes that on April 17, 2003, Rule 15(a) was amended by replacing "thirty days leave to amend shall be granted" with "leave to amend shall be granted when justice so requires upon conditions and within time as determined by the court."

¶12.    Recently, this issue was considered in *Poindexter v. Southern United Fire Ins. Co.*, 838 So.2d 964 (Miss. 2003). Writing for a plurality of the Court, Justice Cobb noted that, unlike the federal rule, our Rule15(a) at that time provided an absolute right to amend. *Id.* at 970. The plurality concluded that a denial of such right was an abuse of discretion. *Id.* We adopt this view today. Therefore, in accordance with a plain reading of the rule, the Court rejects the *futility exception* to the former absolute right to amend. *See Sligh v. First Nat'l Bank of Holmes County*, 704 So.2d 1020, 1024 (Miss. 1997).

¶13.    In the instant case, following dismissal, Lane was entitled to 30 days leave to amend.  However, by January 31, 2001, Lane had yet to file an amended complaint and when requested by the trial judge, was unable submit a copy to the court.  The right to amend was automatic, and there is no need to petition the court for thirty days leave.  ***Sligh v. First Nat'l Bank of Holmes County***, 704 So.2d at 1024.  Nevertheless, because she failed to exercise her right, the decision of trial court is affirmed.

## II.    DID THE CIRCUIT COURT ERR IN GRANTING JUDGMENT ON THE PLEADINGS.

¶14.    Broadly speaking, the second issue is whether the MPLA bars all suits based on injuries that arise out of the use tobacco products.  Lane contends that § 11-1-63 does not preclude all product liability claims against tobacco companies as a matter of law.  Instead, she argues MPLA limits claims arising out of the use of unaltered tobacco, but not those arising out of the use of altered tobacco.  Lane alleges that manufacturers' defectively designed product led to Muse's cancer and that the defect is not an "inherent characteristic" of tobacco, but rather is a result of the intentional mixing of toxic compounds.

¶15.    Liggett submits that the trial court's decision was a proper application of the law.  They contend that the "defects alleged by the Lane are generic aspects of cigarettes that cannot be eliminated without substantially compromising the usefulness or desirability of the product and which are recognized by the ordinary person with ordinary knowledge common to the community."  Moreover, Liggett argues that the Legislature and the drafters of the Restatement of Torts 2d specifically intended to limit tobacco related product liability claims.

¶16.    Generally, to recover in a products liability action based on a design defect, plaintiffs must prove that at the time the product left the control of the manufacturer or seller: (1) the product was designed in a defective manner; (2) the defective condition rendered the product unreasonably dangerous to the user

6

or consumer; and (3) the defective and unreasonably dangerous condition of the product was the proximate cause of plaintiff's damages.  Bobby Marzine Harges, *An Evaluation of the Mississippi Products liability Act of 1993*, 63 Miss. L.J. 697, 712 (1994) (paraphrasing Miss. Code Ann. § 11-1-63 (1993)).

¶17.    Mississippi's products liability law is based on Restatement (Second) of Torts § 402A.  **Horton v. Am. Tobacco Co.**, 667 So.2d 1289, 1295 (Miss. 1996) (citing **Sperry-New Holland v. Prestage**, 617 So.2d 248, 253-54 (Miss. 1993)(holding "Section 402A is still the law in Mississippi"). *See also* **Smith v. Mack Trucks, Inc.**, 819 So.2d 1258 (Miss. 2002).

¶18.    Section 11-1-63 states, in pertinent part:

> *In any action for damages caused by a product* except for commercial damage to the product itself:
>
> (a)    The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> > (i)    1.    The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
> >
> > 2.    The product was defective because it failed to contain adequate warnings or instructions, or
> >
> > 3.    The product was designed in a defective manner, or
> >
> > 4.    The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
> >
> > (ii)    The defective condition rendered the product unreasonably dangerous to the user or consumer; and
> >
> > (iii)    The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

7

(b)　　*A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.*

Miss. Code Ann. § 11-1-63 (a)-(b) (2002) (emphasis added).[1] Section 11-1-63(b) incorporates the principles of § 402A. ***Prestage***, 617 So.2d at 254. In the past, the Court has used the accompanying comment, specifically comment i, for guidance. ***Id.***; *See also*, Harges, *supra* at 713.

¶19.　　Comment i is commonly known as the "inherent characteristics rule" and states:

Unreasonably dangerous[:] The rule stated in this Section applies only *where the defective condition of the product makes it unreasonably dangerous to the user or consumer*. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. *The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.* Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.* Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Restatement (Second) of Torts § 402A cmt. i (1965) (emphasis added).

---

[1] We note that the Legislature has since amended § 11-1-63. *See* H.B. 19, 2002 3rd Ex. Session (Miss.).

¶20. Strictly interpreted, § 11-1-63 precludes all product liability actions against tobacco companies. The harm from tobacco use has been well documented, and elimination of the sources of the harm would greatly reduce the desirability of cigarettes. The complaint filed by Lane alleges nothing to avoid the limitations set forth in either § 11-1-63 or the comment.

¶21. Likewise, the adoption of a law based on § 402A indicates that it was the intent of the Legislature to abate the large volume of tobacco litigation. Specifically, the comment states that the effects of smoking do not render tobacco unreasonably dangerous. Although not adopted by the Legislature, the comment is instructive.

¶22. In a similar case, Chief Justice Hawkins discussed the effect the "inherent characteristics" standard would have on future product liability claims arising out of the use of tobacco. *Horton v. Am. Tobacco Co.*, 667 So.2d 1289, 1293-98 (Miss. 1996)(Hawkins, C.J., concurring in part & dissenting in part). With Presiding Justice Prather and Justice Smith joining, Chief Justice Hawkins stated that all future tobacco litigation based solely on products liability law will be governed by § 11-1-63 and dismissed via Rule 12(b) or summary judgment. *Id*. at 1297. ("The plaintiff's claims in *Horton* eluded such a fate only because they preceded the enactment of § 11-1-63.") *Id.* He maintained that with the MPLA the Legislature sought to curb "judicial excess" and, citing various authorities, declared that when a person buys a perfectly legal product, which he or she knows is designed to do certain things, a seller cannot be liable if the plaintiff is injured because the product did precisely that what it was designed to do. *Id*. at 1296-97 (citations omitted). Additionally, he noted that there was no distinction between "smoking" and tobacco. *Id*. at 1297.

¶23. Liggett relies on a Fifth Circuit case from Texas. In *Sanchez*, the Fifth Circuit held that the plaintiffs' claims, although masked as RICO and fraud claims, were barred by the Texas statute codifying

§ 402A. ***Sanchez v. Liggett & Myers, Inc.***, 187 F.3d 486, 491 (5th Cir. 1999). Finding all claims against tobacco companies, or derivatives thereof, barred by the statute, the court upheld the district court's Rule 12(c) dismissal. *Id*.

¶24. For support, Lane only cites ***Thomas v. R.J. Reynolds Tobacco Co.***, 11 F. Supp. 2d 850 (S.D. Miss. 1998). In ***Thomas***, the district court stated that it was *possible* that a plaintiff could establish a cause of action against the in-state defendants in state courts by arguing that cigarettes were defectively designed so as to render them unreasonably dangerous. *Id.* at 850 (emphasis added). The interpretation of § 11-1-63 was that plaintiffs stood a chance of recovering damages if they could prove both that the defendants manipulated the content of what should have been good tobacco and that the product was defective. *Id.* at 851-53. Opting for a stricter construction of § 11-1-63, this Court declines to follow the decision by the learned district judge.

¶25. In the instant case, the Court agrees with Liggett and the opinion by Chief Justice Hawkins. "Section 402A specifically states that there can be no products liability based on smoking." ***Horton***, 667 So.2d at 1295 (Hawkins, C.J. concurring in part & dissenting in part). The Court finds that the Legislature intended to eliminate products liability claims stemming from tobacco use. Strictly applying § 11-1-63, the Court finds that state law definitively precludes this lawsuit.

¶26. Except for ***Thomas***, Lane fails to provide any argument or support for this Court to hold otherwise. Liggett's argument is well supported by the opinion of Chief Justice Hawkins and ***Sanchez***. As a matter of law, the alleged defects are inherent and are "recognized by the ordinary person with ordinary knowledge common to the community."

## CONCLUSION

10

¶27.    We adopt the plurality's view from ***Poindexter v. Southern United Fire Ins. Co.*** Following the dismissal, the plaintiffs had a right to amend their complaint. However, during the thirty-day period, their failure to submit an amended complaint allowed the period to lapse.

¶28.    Finally, the  dismissal was proper in light of § 11-1-63. State law precludes all tobacco cases that are based on products liability.  For these reasons, the judgment of the circuit court is affirmed.

¶29.    **AFFIRMED.**

**SMITH, P.J., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR.  DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  McRAE, P.J., NOT PARTICIPATING.**